# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SELECT ENERGY SERVICES, INC., ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIV-19-28-R |
| MAMMOTH ENERGY SERVICES, INC., ET AL., | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court are certain motions to dismiss (Doc. Nos. 20 and 47) filed by Defendants and Plaintiffs' responses thereto. Upon consideration of the parties' submissions, the Court finds as follows.

Defendants McDonald, Pack, Stover, and Carr, are all former employees of Plaintiff Crescent Services, an indirect subsidiary of Plaintiff Select Energy Services. Plaintiffs provide "end-to-end water management solutions to oil and gas producers in Oklahoma and other states." (Amended Complaint, ¶ 4). Plaintiffs allege that, in violation of certain employment and confidentiality/non-solicitation agreements, its former employees, Defendants McDonald, Pack, Stover, and Carr, downloaded or otherwise obtained confidential information, specifically certain of Plaintiffs' trade secrets, and misappropriated those trade secrets, specifically by providing them to their current employer, Defendant Aquahawk, which is a subsidiary of Defendant Mammoth. Defendants seeks dismissal of Plaintiffs' federal Defend Trade Secrets Act ("DTSA")

claims, asserting that the Court lacks subject matter jurisdiction over this action because Plaintiffs' DTSA cause of action is not sufficiently pled, there are no additional federal claims, and the parties are not diverse. Defendants additionally contend that certain of Plaintiffs' state law claims are insufficiently pled, and alternatively request that the Court decline to exercise supplemental jurisdiction over the state law claims or abstain from consideration thereof in light of pending litigation between certain of these same parties in the District Court of Oklahoma County related to the validity and enforceability of employment agreements between the individual Defendants and Plaintiffs or their predecessors.

Defendants rely on Rule 12(b)(1) for the instant motion, asserting a lack of subject matter jurisdiction because Plaintiff's DTSA claim is not sufficiently alleged in the Amended Complaint. Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). Although Defendants contend that Plaintiffs' only federal claim is insufficiently pled, this alleged failure does not deprive this Court of jurisdiction; rather, the motion should be considered under Rule 12(b)(6).

> Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law[,] and just as issues of fact[,] it must be decided after[,] and not before[,] the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that

> the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Id.* at 1167-68 (quoting *Bell v. Hood*, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946)). As stated by the court in *Harris v. Owens,* 264 F.3d 1282, 1289 (10th Cir. 2001), "[i]f the federal claim is not wholly frivolous, it suffices to establish federal jurisdiction even if it ultimately is rejected on the merits." (citing *Martinez v. United States Olympic Comm.*, 802 F.2d 1275, 1280–81 (10th Cir.1986)). Accordingly, a conclusion by the Court that Plaintiffs failed to state a claim would not deprive the Court of subject matter jurisdiction, and consideration of the instant motion is governed entirely by the familiar standard applicable to motions under Rule 12(b)(6) set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). [1]

When assessing whether a complaint "fails to state a claim upon which relief may be granted," the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' *Iqbal*, 556 U.S. at 678(quoting *Twombly*, 550 U.S. at 570). The Court accepts the Plaintiffs' well-pled factual allegations as true and views them in the light most favorable to the *Plaintiffs. United States v. Smith*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Court, however, is not required to accept legal conclusions alleged in the complaint as true. *Iqbal*, 556 U.S. at 678. "Thus, mere 'labels and conclusions' ... will not suffice" to state a claim. *Khalik v.*

---

[1] Defendants argue in part that Plaintiffs lacks standing with regard to one of the trade secrets at issue, rig schedules, which Plaintiffs allege are provided to it by the customer, and therefore, according to Defendants, the customer is the owner of these trade secrets, not Plaintiffs. Ordinarily a challenge to standing would implicate the Court's jurisdiction, *Farmer v. Kansas State* University, --- F.3d ---, 2019 WL 1233463, *11 n. 6 (10th Cir. Mar. 18, 2019). However, because Plaintiffs allege that a number of different trade secrets were misappropriated, the Court will consider the issue of rig schedules in conjunction with the remainder of Plaintiffs' trade secrets allegations, rather than in the order presented by Defendants in their motion.

*United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).[2]

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Generally speaking, a trade secret is information that derives economic value from not being generally known that is subject to reasonable measures of secrecy by it owners. *See* 18 U.S.C. § 1839(3). The statute identifies some examples, provided they meet the above criteria:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically . . . .

*Id.* The Act permits an owner to recover for the "misappropriation" of a trade secret, which includes both acquisition, disclosure, and use of such. 18 U.S.C. §§ 1839(5).

Plaintiff's Amended Complaint treats the Defendants as both individuals and collective entities. That is, certain allegations are levied against the four individual former employees, who are also referenced throughout the Amended Complaint collectively as "Former Employees." Similarly, the two corporate Defendants are often referenced as a single entity and are also subject to allegations with the individuals as a collective entity

---

[2] Generally if the Court considers evidence beyond the pleadings in assessing a Rule 12(b)(6) motion it must convert the motion to one for summary judgment under Rule 56. However, the Court "may consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (citations omitted).

known as the "Mammoth Group." Of course, for an individual former employee to be liable under the DTSA, Plaintiffs must allege sufficient facts against that employee individually and the same holds true for a corporate Defendant. Much like in the context of litigation under 42 U.S.C. § 1983 where there are multiple Defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Here it is important that Plaintiffs plead, with regard to each Defendant, that the Defendant misappropriated a trade secret. As the court noted in a case involving a single former employee and a number of allegedly misappropriated trade secrets:

> Upon review of the allegations made in support of the trade secrets claims, the court has determined that there are allegations which satisfy each of the elements of the claims challenged by the Defendants. What is not clear, however, is whether the allegations for each element apply consistently to the same categories of trade secrets.

*Southern Field Maintenance & Fabrication LLC v. Killough*, No. 2:18-cv-581-GMB, 2018 WL 4701782 (M.D. Ala. October. 1, 2018). The Court has combed through the Amended Complaint and the parties' briefs on the motion to dismiss and concludes that Plaintiffs have sufficiently alleged at least one claim for misappropriation against each of the four individual Defendants and the corporate Defendants. Certain of Plaintiffs' alleged trade secrets claims, however, are insufficiently pled and therefore cannot survive the instant motion.

In order to plead a claim for violation of the DTSA, a plaintiff must allege that it lawfully owned information of independent economic value that it took reasonable measures to keep secret, and that the defendant under consideration either acquired,

5

disclosed, or used, improperly.[3] 18 U.S.C. § 1839; *See Southern Field Maintenance & Fabrication*, 2018 WL 4701782 at *2. Defendants contend that Plaintiffs fail to sufficiently allege trade secrets, reasonable measures to keep such secrets, and misappropriation of any trade secret. Defendants also challenge Plaintiffs' standing to seek relief under the DTSA with regard to rig schedules, because those schedules belong to Plaintiffs' clients.

Plaintiffs do not argue ownership of the rig schedules. Rather, they assert that "[t]he trade matter misappropriated is the compilation of the information which was acquired over time and through the expenditure of a significant amount of labor, skill and money by the Select Parties." (Doc. No. 49, p. 5). Although 18 U.S.C. § 1836(b)(1) includes compilations in the definition of trade secret, Plaintiffs' explanation does not establish how a rig schedule, one of the items in Plaintiffs' litany of allegedly misappropriated trade secrets, could support their DTSA claim, when only owners of trade secrets may seek relief under the Act. The Court finds that Plaintiffs' allegations related to rig schedules are insufficient to establish that Plaintiffs were the owners of such so as to permit trade secret protection.[4] The Court finds herein that Plaintiff's allegations that one or more Defendants misappropriated rig schedules fails to state a claim, because Plaintiffs have not alleged that

---

[3] This Court's orders in *Blue Star Land Services, LLC v. Coleman*, Case No. CIV-17-931-R, are helpful but not binding. The parties rely heavily on *Blue Star*, however, the Court's December 8, 2017 Order granting in part and denying in part a motion to dismiss was never designated as the pleading standard for a DTSA claim alleging that former employees misappropriated trade secrets. Each case must be assessed based on the allegations in its pleadings, making direct comparisons between cases difficult. The same holds true for allegiance to a ruling by any court on a Motion to Dismiss in a DTSA case. The caselaw regarding the requisite specificity for pleading DTSA claims is vast and varied, unsurprising given the broad definition of a trade secret provided therein.

[4] Although the Court in *Blue Star* concluded that rig schedules could be trade secrets, there was no contention by defendants therein in the motion to dismiss that the plaintiff was not the owner of the rig schedules allegedly misappropriated. Consequently, the Court's conclusion that rig schedules can be trade secrets in the *Blue Star* case is of limited utility in this case.

they owned the schedules or any information therein, which was provided by Crescent's clients. *See e.g. Amended Complaint, ¶ 57*.

> For a complaint alleging violation of the DTSA to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must identify the purported trade secrets, but it may do so generally to avoid publicly disclosing the information in its court filings. *See Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920–21 (N.D. Ill. 2016) (holding that a complaint was well-pleaded when it identified the purported trade secrets as including "business models, ... business plans, and product development plans"). Here, Wells Lamont alleges that Mendoza was exposed to confidential information such as "customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports," FAC ¶ 25, and that he took "substantial amounts" of this information with him to Radians once he resigned from Wells Lamont, id. ¶ 27. These allegations are sufficient to state a DTSA claim. *E.g., SleekEZ, LLC v. Horton*, CV 16-09-BLG-SPW-TJC, 2017 WL 190695, at *4 (D. Mont. Apr. 21, 2017) (holding that the allegations were adequate when the complaint generally described the information as its "industry contacts and customers[ ] and its marketing and business strategies"); *Aggreko, LLC v. Barreto*, No. 1:16-CV-353, 2017 WL 963170, at *2 (D. N.D. Mar. 13, 2017) (holding that a complaint's allegations were adequate when they described the trade secrets as "including customer lists and information regarding [the plaintiff's] operations, customers, business proposals, pricing strategy, client preference and history, and proprietary pricing models")

*Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017).

> In this case, Plaintiff alleges Defendant "accessed CLS' proprietary and confidential electronic data" including Plaintiff's [ ] financial statements, customer lists, and sales records, which are kept on Plaintiff's "secure and protected computer system." R. Doc. 98 at ¶ 98. Moreover, Plaintiff alleges it "maintains its Confidential Information as confidential within CLS and does not share this information outside of CLS," R. Doc. 98 at ¶ 38, which Plaintiff alleges makes the information "highly valuable." Id. at ¶ 39. Finally, Plaintiff alleges it "derives a competitive advantage and independent economic value, both actual and potential, from the Confidential Information, because the Confidential Information is not generally known to the public or to others who can obtain economic value from its disclosure or

7

use." The Court finds Plaintiff has sufficiently alleged the existence of a trade secret.

*Complete Logistical Services, LLC v. Ruth*, 350 F.Supp.3d 512, 519 (E.D.La. 2018); *see also Inmar, Inc. v. Vargas*, No. 18-cv-2306, 2018 WL 6716701, at *3 (N.D. Ill. Dec. 21, 2018)(finding allegations that former employee misappropriated business development plans for existing clients, Plaintiffs' pricing and marketing strategies, lead sources, client lists, position in the market, and research dossiers sufficient to avoid dismissal).

> A robust consensus of district courts within the Third Circuit have held that a party alleging misappropriation in violation of PUTSA need not describe trade secrets with particularity to survive Rule 12 scrutiny. *Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2015 WL 410029, at *5 (E.D. Pa. Jan. 29, 2015); *Mattern & Assocs., LLC v. Latham & Watkins LLP*, No. 13-6592, 2014 WL 4804068, at *3 (E.D. Pa. Sept. 26, 2014); *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4205476, at *27 (E.D. Pa. Sept. 19, 2012) (collecting cases). . . . In the two years since the DTSA's enactment, district courts across the country have applied a similar standard to federal misappropriation claims at the Rule 12 stage. *See, e.g., Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-CV-404, 2018 WL 5045429, at *8 (N.D. Cal. Oct. 17, 2018); S. *Field Maint. & Fabrication LLC v. Killough*, No. 2:18-CV-581, 2018 WL 4701782, at *3-4 (M.D. Ala. Oct. 1, 2018) (*citing Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17-1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) ); *see also Chubb Ina Holdings Inc. v. Chang*, No. 16-2354, 2017 WL 499682, at *10 (D.N.J. Feb. 7, 2017).

*Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, No. 1:17-CV-1587, 2019 WL 1003623, at *9 (M.D. Pa. Feb. 28, 2019). Additionally, "the question of whether certain information constitutes a trade secret ordinarily is best 'resolved by a fact finder[.]'" *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978)). Keeping in mind these standards, the Court turns to Plaintiffs' specific allegations.

The Court concurs with Defendants that Plaintiffs' allegations that technical know-how and processes are trade secrets are too vaguely pled to avoid dismissal. Because Plaintiffs provide no additional factual information, the Court cannot discern that what Plaintiff seeks to protect is information distinct from general knowledge that a person working in the water transfer industry would possess by virtue of experience. *See Vendavo, Inc. v. Price f(x) AG,* No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)(Plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertan at least the boundaries within which the secret lies.") (citations omitted).

That said, business plans, pricing data, customer lists, independent contractor lists, employee lists, vendor/supplier lists (including water sourcing) have been sufficiently pled as trade secrets. Defendants contend that Plaintiffs' public identification of customers precludes a finding that customer lists are trade secrets. Defendants argue that Plaintiffs' employees can be easily identified on publicly available resources, and therefore employee lists are not entitled to trade secret protection either. The Court is not prepared at this juncture to state as a matter of law customer lists are not entitled to trade secret protection. Undoubtedly the list will contain more information than just the identity of the customers, for example, contact information and non-public information. Additionally, the fact that an enterprising individual could discover the identity of certain employees does not negate the trade secret value of an employee list, which, like a customer list, is likely to contain contact information and other information not readily available. Such lists are likely compilations

of information and the Court finds the allegations sufficient to avoid dismissal.[5] The Court finds that Plaintiffs have sufficiently alleged the existence of trade secrets, save for rig schedules, processes, and technical know-how.

Defendants additionally contend that Plaintiffs have not sufficiently alleged facts to establish they took reasonable measures to keep the information secret as required by 18 U.S.C. § 1839(3)(B). Like the issue of trade secrets, reasonable measures are generally an issue of fact for the jury. *See Learning Curve Toys, Inc.*, 342 F.3d at 724-25 (whether measures taken to protect trade secrets were reasonable is generally a question of fact for the jury, and only in extreme cases can be decided as a matter of law). "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011). Some courts have found confidentiality policies to be reasonable efforts to maintain secrecy when combined with internal information classification and control guidelines. See *Deluxe Fin. Servs., LLC v. Shaw*, No. 16-3065 (JRT/HB), 2017 WL 3327570 at *3 (D. Minn. Aug. 3, 2017)*; see also Raju v. Murphy*, No. 3:17-CV-357-CWR-FKB, 2019 WL 982863 at *3–4 (S.D. Miss. Feb. 28, 2019)(a proposed complaint alleging that the plaintiff "'maintained, or took reasonable precautions to maintain,' the secrecy of his trade secrets," including the execution of a confidentiality agreement" sufficient at the pleading stage).

In the instant case Plaintiffs allege that Crescent's servers were password protected and limited to managerial employees. (Amended Complaint, ¶ 31). Additionally, with

---

[5] The Court disagrees with the holding in *Veronica Foods Co. v Ecklin*, 2017 WL 2806706 (N.D. Cal. June 29, 2017), wherein the court concluded that customer lists, including ordering and pricing history, were not entitled to trade secret protection when the plaintiff had previously disclosed a list of vendors who sold its goods.

regard to the four former employee Defendants, Plaintiffs allege that confidentiality provisions existed in certain agreements executed by those men in conjunction with their employment and that each agreed not to reveal confidential information or trade secrets.

Specifically, Defendant McDonald, previously employed as a water transfer foreman, executed an employment agreement that precluded the disclosure of "all secret, proprietary or confidential information, knowledge or data . . . relating to the Company. . . which shall have been obtained by Employee during Employee's employment by the Company." (Id. ¶ 23). Similarly, Defendant Stover, Vice President of Water Solutions, had agreements that prohibited him from disclosing confidential and trade secrets information. (Amended Complaint ¶¶ 23, 24, 25). Defendant Pack, formerly a district manager for Plaintiffs, executed similar agreements to Defendants McDonald and Stover. (Amended Complaint, ¶ 23-25, 27). Defendant Carr, also a district manager, executed agreements with confidentiality provisions. (Amended Complaint, ¶ 28).

Defendants argue Plaintiffs cannot rely on the provisions in any employment agreements to support the allegation that they took reasonable measures to keep information secret:

> As a whole, the Plaintiffs alleged efforts at reasonable secrecy fall far short. The confidentiality and non-solicitation agreements that Plaintiffs rely on so heavily throughout the Amended Complaint cannot form the backbone of their trade secrets claims for several reasons. First, as argued in the motion for summary judgment that is currently at issue in state court, the Employment Agreements are not enforceable as a matter of law. Seeking to enforce unenforceable agreements is, if anything, an *un*reasonable effort at secrecy.

Doc. No. 47, p. 7. The Court disagrees with Defendants' argument. There is no suggestion

in the Amended Complaint or the Motion to Dismiss that the employment agreements and confidentiality provisions upon which Plaintiffs rely were drafted with either the belief or understanding that such agreements were unenforceable, nor has any court ruled that any of the agreements is unenforceable.[6] Additionally, that the confidentiality agreements define "trade secret" more narrowly than the DTSA does not preclude a finding that a defendant violated the DTSA, because the agreements prohibit disclosure of customer lists, independent contractor and employee lists, pricing data, and business plans. Accordingly, the disparate definitions of "trade secret" do not preclude Plaintiffs' claims.

Defendants next assert that Plaintiffs have failed to sufficiently allege misappropriation. In keeping with the Court's prior commentary regarding the need to allege sufficient facts against each individual Defendant, the Court does its best to consider Plaintiffs' specific allegations of alleged misappropriation against the individual and corporate Defendants separately.

> A misappropriation occurs when: (1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means; (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent; or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent. *See Mission Measurement Corp. v. Blackbaud, Inc.*, 2016 WL 6277496, at *4 (N.D. Ill. Oct. 27, 2016) (citing 18 U.S.C. § 1839(5)).

---

[6] Defendant's second argument is that the agreement attached to the Amended Complaint as Exhibit 4 is for a non-party to this case, a fact Defendants states it has told Plaintiffs. The contract purports to have been executed with Eric McDonald, and the Court cannot resolve any factual dispute regarding whether the person who executed that contract is the same Eric McDonald named as a Defendant herein.

*Roeslein & Assocs., Inc. v. Elgin*, No. 4:17 CV 1351 JMB, 2019 WL 195089, at *10 (E.D. Mo. Jan. 15, 2019).[7]

> [A]lthough exacting specificity is not required at the pleading stage, a plaintiff company must allege that the defendant disclosed, acquired, or used some particular trade secret in an improper manner. *Compare, e.g., Superior Edge*, 964 F. Supp. 2d at 1042 (finding "misappropriation" of "trade secret software developments" plausibly alleged when defendant company "retained" the at-issue software following termination of licensing agreement and "continued to use" it, despite a clear agreement barring it from doing so) with *Schlief v. Nu-Source, Inc.*, No. 10-cv-4477 (DWF/SER), 2011 WL 1560672, at *7 (D. Minn. Apr. 25, 2011) (finding "misappropriation" not plausibly alleged by "mere" allegation that "Plaintiff gained access to Defendants' trade secrets and other confidential, competitive and proprietary information belonging to Defendant, including but not limited to, Defendant's customer and price lists").

*CH Bus Sales, Inc. v. Geiger*, No. 18-CV-2444 (SRN/KMM), 2019 WL 1282110, at *9 (D. Minn. Mar. 20, 2019). Given the three broad areas covered by misappropriation, the Court

---

[7] DTSA defines "misappropriation" as:
    (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
    (B) disclosure or use of a trade secret of another without express or implied consent by a person who--
        (i) used improper means to acquire knowledge of the trade secret;
        (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
            (I) derived from or through a person who had used improper means to acquire the trade secret;
            (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
            (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
        (iii) before a material change of the position of the person, knew or had reason to know that--
            (I) the trade secret was a trade secret; and
            (II) knowledge of the trade secret had been acquired by accident or mistake.
18 U.S.C. § 1839(5).
The DTSA defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A).

finds that Plaintiffs have stated a DTSA claim against each of the individual former employees with regard to the remaining categories of trade secrets.

With regard to Defendants McDonald, Stover, and Pack, the Amended Complaint alleges that each acquired trade secrets by downloading the same from his computer or via transfer of emails from work to personal accounts. *See* Amended Complaint, ¶ 61 ("The Continental rig schedules acquired by Pack through his employment with the Select Parties, along with the detailed pricing and discount terms prepared and negotiated by Stover are just two examples of the type of confidential information and trade secrets that the Select Parties protected and kept from public view. . . . Upon information and belief, Stover downloaded certain confidential information and trade secrets to a thumb drive near the end of his employment. Upon information and belief, Pack forwarded certain confidential information and trade secrets to his personal yahoo email account."), *see also* ¶ 71 ("Upon information and belief, around this same time [June 2018], Stover, Pack and McDonald began downloading and transferring Continental rig information, employee, client and vendor contact lists for use in the solicitation of Continental's water transfer work."). As the allegations pertain to Defendant Carr, Plaintiffs have similarly pled improper acquisition of certain trade secrets. *See* Amended Complaint ¶ 94 ("Initial review of Carr's work emails shows that he forwarded email to his personal account and deleted email from his work account. Upon information and belief, a forensic review of Carr's email will show misappropriation of trade information via email.") and ¶ 104 ("[Around December 2018, Carr] began downloading, transferring and deleting emails related to confidential trade secret information related to his work with XTO, such as rig schedules and employee and

established customer contact lists. Based on a review of his old computer, it is likely that he transferred this information to a personal email account. After acquiring and transferring the information, Carr gave his notice of resignation to the Select Parties on January 2, 2019.").

> Allegations that a defendant abused its legitimate access to the plaintiff's confidential information are enough to plead misappropriation of trade secrets under the DTSA. See 18 U.S.C. § 1839(6) (providing that breach of a duty to maintain secrecy constitutes improper means); *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 CV 06113, 2017 WL 4269005, at *7 (N.D. Ill. Sept. 26, 2017) (concluding that "allegations that [the defendant's employee and plaintiff's former employee] abused his legitimate access" to the plaintiff's confidential information was "sufficient at the pleading stage to plausibly allege" misappropriation).

*NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17-c-8829, 2018 WL 3637356 at *14 (N.D. Ill. July 31, 2018). Therefore, Plaintiffs have alleged sufficient facts to avoid dismissal with regard to improper acquisition, disclosure, and use of trade secrets in violation of various confidentiality provisions, and have sufficiently stated a claim against each of the individual Defendants.

With regard to the corporate Defendants, Plaintiffs have sufficiently alleged use of trade secrets so as to plead a claim under the DTSA.

> "Misappropriation can be shown one of three ways—by improper acquisition, unauthorized disclosure, or unauthorized use." *Covenant Aviation*, 15 F.Supp.3d at 819. Plaintiffs allege that for several week[s] prior to resigning, Plaintiffs forwarded multiple emails from her Collective Bias issued computer to her private email. These emails possessed Plaintiffs' confidential information. e.g., customer lists, business development plans, pricing, and market strategies. Murphy's alleged conduct exceeded her authorized use of Plaintiffs' confidential information. Plaintiffs claim that shortly after Murphy started working for Inmar, she began to use Plaintiffs' confidential information to benefit herself and Inmar. More specifically, Murphy used the information to solicit Plaintiffs' clients. These allegations

15

are sufficient [to] plead misappropriation. *See RKI, Inc. v. Grimes*, 177 F.Supp.2d 859, 875 (N.D. Ill. 2001) (finding misappropriation, where the former employee downloaded or copied the plaintiff's confidential data shortly before resigning and later used the data to help solicited business from the plaintiff's); *Liebert Corp. v. Mazur*, 357 Ill.App.3d 265, 293 Ill.Dec. 28, 827 N.E.2d 909, 926 (Ill. App. 2005) (finding misappropriation where the employee downloaded several price books on his laptop computer just hours before resigning and agreeing to work for competitor).

*Inmar, Inc. v. Vargas*, No. 18-CV-2306, 2018 WL 6716701, at *4 (N.D. Ill. Dec. 21, 2018).

Plaintiffs have alleged the following in the Amended Complaint:

> 71. The transfer of this information to Mammoth and Aquahawk would later enable the Mammoth Parties to purchase equipment, identify key Select Parties' employees for recruitment, setup necessary water sourcing, pinpoint active regions, and create a business plan that could meet Continental's immediate needs in order to usurp the opportunities that the Select Parties had just been awarded from Continental in May.

> 101. Upon information and belief, the misappropriation of confidential business information, proprietary information, and trade secrets such as Select Parties' business plans, customer rig schedules, established customer relationship information, and pricing data by Stover, Pack, and McDonald, and disclosure to Mammoth and Aquahawk, was what enabled Mammoth to form a competing entity in a few weeks.

> 105. Upon information and belief, Carr has provided this information to Mammoth and Aquahawk with the intention of using the trade secret information to solicit the work of XTO for the benefit of Mammoth and Aquahawk.

> 150. The Mammoth Parties acquired such information through the improper means of the Former Employees' breach of their duty of loyalty and contractual obligations to the Select Parties, which Mammoth and Aquahawk induced.

Additionally, from Plaintiffs' allegations it is apparent that Aquahawk was aware of the individual Defendants' access to trade secrets, given the letter each of the men received from their new employer warning them not to disclose the same and that Defendants have

16

acquired Continental's water transfer business, previously undertaken by Plaintiff. Plaintiffs have sufficiently alleged that Defendants Aquahawk and Mammoth used information acquired by the individual Defendants to solicit business previously "awarded" to Crescent. Accordingly, the Court denies Defendants' Motion to Dismiss as it relates to the DTSA claim, except with regard to rig schedules, processes and know how.

Defendants further contend that certain state law claims set forth in the Amended Complaint, specifically counts 4, 5, 7, 8, 9, and 10 should be dismissed for failure to state a claim. As to all state law claims, Defendants contend the Court should either decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 or abstain from consideration of the claims pursuant to the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

Because the Court did not dismiss Plaintiffs' DTSA claim, Defendants' reliance on 28 U.S.C. § 1367(c)(3) is foreclosed. However, as noted in Defendant's motion, the Court may nevertheless decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4) in light of the pending state court litigation between certain of the parties.

On August 2, 2018, Ryan Stover, Kevin Scott Pack, Todd McDonald and Kevin Carr filed an action seeking declaratory relief in the District Court of Oklahoma County, against Select Energy Services, Inc, Select Energy Services, LLC, and Crescent Services, L.L.C., Case No. CJ-2018-4195. Therein they sought a determination that they are no longer bound by certain restrictive covenants set forth in a March 31, 2016 Employment Agreement with Crescent. On August 3, 2018, Crescent filed a lawsuit against Stover in that same court, seeking injunctive relief to enforce the restrictive covenants. *See Crescent*

17

*v. Stover*, CJ-2018-4242. On August 8, 2018, an Amended Petition was filed in *Stover v. Crescent,* adding Mammoth Energy Services, Inc. and Aquahawk Energy, LLC as party plaintiffs. On September 11, 2018, Crescent filed suit against Eric McDonald and Kevin Pack in the District Court of Oklahoma County, Case No. CJ-2018-4938, seeking injunctive relief and damages for the alleged violation of the employment agreements. Mammoth and Aquahawk dismissed their claim on September 24, 2018. On November 9, 2018, the District Court of Oklahoma County consolidated the three actions, to proceed under CJ-2018-4195. On January 11, 2019, Plaintiffs filed this lawsuit, presumably precipitating the January 15, 2019, dismissal of the state court claims against Stover, McDonald, and Pack. On March 8, 2019, a Second Amended Petition was filed by Stover, Pack, McDonald, and Carr against Select and Crescent seeking a declaration that the restrictive covenants in their respective employment contracts are unenforceable. Plaintiffs also allege abuse of process by Defendants for the filing of this lawsuit and tortious interference with a contract. Ryan Stover filed a motion for summary judgment which is set for hearing on April 4, 2019, in state court.

> Subsection 1367(c)(4) authorizes federal courts, upon the recognition of "exceptional circumstances," to decline supplemental jurisdiction. The use of "exceptional circumstances" indicates that "Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are quite unusual." *Executive Software*, 24 F.3d at 1558. In other words, declining jurisdiction outside the ambit of 1367(c)(1)-(3) appears as the exception rather than the rule. Thus, federal courts "must ensure that the reasons identified as 'compelling' are not deployed in circumstances that threaten this principle." *Id*.

*Itar-Tass Russian News Agency v. Russian Kurier, Inc*., 140 F.3d 442, 448 (2d Cir. 1998).

The Court finds that the pendency of the state court action, wherein the court will decide the validity of one or more of the agreements between Plaintiffs and the individual former employee Defendants, provides "exceptional circumstances" that warrant the Court declining to exercise supplemental jurisdiction. The state court cases, except the claims against Defendant Carr, were filed long before this action was initiated. Plaintiffs could have filed this action in August 2018, but instead waited until January of this year to invoke federal jurisdiction by pleading a claim under the DTSA. Each of the claims brought by Plaintiffs in this action could have been pursued in the already-existing state court litigation, and from the Court's perspective the DTSA claims are not the foundation of Plaintiffs' lawsuit, but rather a way to get all of its claims before this Court. "[T]he Supreme Court and the Tenth Circuit have stated that 'the justification for the exercise of supplemental jurisdiction: lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims even though bound to apply state law to them.' *Gullickson* [*v. Southwest Airlines Pilots' Ass'n*, 87 F.3d [1176,] 1187 [(10th Cir. 1996)] (quoting [*United Mine Works of America v.* ] *Gibbs*, 383 U.S. [715,] 726 [(1966)])." *Long v. Cordain*, No. 13-cv-3475 RM-NYM, 2015 WL 5081624, *4 (D. Colo. August. 28, 2015).

Here the issue of the validity of the restrictive covenants is at issue in both forums. The state court is better suited to consider the validity of the covenants given that the issues involve state law and the state case has progressed further than the instant action. The District Court of Oklahoma County has set a hearing for April 4, 2019 to address Ryan Stover's motion for summary judgment. The interest of judicial economy will not be served

by proceeding with the state law claims in this forum. Additionally, it would be unfair to the individual defendants for this Court to exercise jurisdiction over the state law claims.

Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, it need not consider Defendants' contention that the Court should apply *Colorado River* abstention.

For the reasons set forth herein, Defendants' Motion to Dismiss (Doc. No. 47) is denied. Pursuant to 28 U.S.C. § 1367(c)(4), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, the Motion to Dismiss (Doc. No. 20) is granted as it addresses Plaintiffs' state law claims. Plaintiffs' Response to the Motion to Dismiss includes a request for leave to amend. The Court declines Plaintiffs' invitation to grant leave to amend absent a separate motion accompanied by a proposed second amended complaint as required by Local Civil Rule 15.1, limited to amending Plaintiffs' DTSA claims in an effort to expand the scope thereof. Finally, because Plaintiffs' Motion for Preliminary Injunction is premised on their state law claims, over which the Court has declined to exercise supplemental jurisdiction, the motion is denied and the hearing previously scheduled for April 3, 2019 is hereby stricken and the Motion for Preliminary Injunctive Relief (Doc. No. 3) is DENIED.

**IT IS SO ORDERED** this 29th day of March 2019.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE